E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
SARAH SPIELBERGER (Cal. Bar No. 311175)
ALEXANDRA MICHAEL (Cal. Bar No. Pending)
Assistant United States Attorneys
General Crimes Section
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-3756
    Facsimile: (213) 894-0141
    E-mail:   sarah.spielberger@usdoj.gov
             alexandra.michael@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Plaintiff,<br><br>         v.<br><br>CARLOS CORONA, et al.,<br><br>     Defendants. | No. 23-CR-429-JFW-2<br><br>PLEA AGREEMENT FOR DEFENDANT JOSE LUIS EDEZA JR. |

    1.   This constitutes the plea agreement between JOSE LUIS EDEZA JR. ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

    2.   Defendant agrees to/that:

        a.   At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to Counts One and 50

WP
04/10/24

of the indictment in <u>United States v. Carlos Corona, et al.</u>, No. 23-CR-429-JFW-2, which charge defendant with Conspiracy to Commit Bank Fraud, in violation of 18 U.S.C. § 1349, and Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A(a)(1).

    b.   Not contest facts agreed to in this agreement.

    c.   Abide by all agreements regarding sentencing contained in this agreement.

    d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

    e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

    f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

    g.   Pay the applicable special assessments at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

    h.   Any and all criminal debt ordered by the Court will be due in full and immediately.  The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

    i.   Complete the Financial Disclosure Statement on a form provided by the USAO and, within 30 days of defendant's entry of a guilty plea, deliver the signed and dated statement, along with all

of the documents requested therein, to the USAO by either email at
usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial
Litigation Section at 300 North Los Angeles Street, Suite 7516, Los
Angeles, CA 90012. Defendant agrees that defendant's ability to pay
criminal debt shall be assessed based on the completed Financial
Disclosure Statement and all required supporting documents, as well
as other relevant information relating to ability to pay.

j.   Authorize the USAO to obtain a credit report upon
returning a signed copy of this plea agreement.

k.   Consent to the USAO inspecting and copying all of
defendant's financial documents and financial information held by the
United States Probation and Pretrial Services Office.

THE USAO'S OBLIGATIONS

3.   The USAO agrees to:

a.   Not contest facts agreed to in this agreement.

b.   Abide by all agreements regarding sentencing contained
in this agreement.

c.   At the time of sentencing, move to dismiss the
remaining counts of the indictment as against defendant. Defendant
agrees, however, that at the time of sentencing the Court may
consider any dismissed charges in determining the applicable
Sentencing Guidelines range, the propriety and extent of any
departure from that range, and the sentence to be imposed.

d.   At the time of sentencing, provided that defendant
demonstrates an acceptance of responsibility for the offenses up to
and including the time of sentencing, recommend a two-level reduction
in the applicable Sentencing Guidelines offense level, pursuant to

3

U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

NATURE OF THE OFFENSES

4. Defendant understands that for defendant to be guilty of the crime charged in Count One, that is, Conspiracy to Commit Bank Fraud, in violation of Title 18, United States Code, Section 1349, the following must be true:

a. First, beginning no later than October 14, 2020, and continuing through at least on or about August 18, 2023, there was an agreement between two or more persons to commit Bank Fraud, in violation of Title 18, United States Code, Section 1344(1);

b. Second, defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

c. Third, one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

5. Defendant understands that for an individual to be guilty of Bank Fraud, in violation of Title 18, United States Code, Section 1344(1), the following must be true:

a. First, the individual knowingly executed or attempted to execute a scheme to defraud a financial institution of something of value;

b. Second, that the statements made as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

c. Third, the individual did so with the intent to defraud the financial institution; and

4

1          d.    Fourth, the financial institution was insured by the
2    Federal Deposit Insurance Corporation.

3        A "scheme to defraud" means any deliberate plan of action or
4    course of conduct by which someone intends to deceive or cheat, in
5    other words to deprive the victim of money or property by means of
6    deception.  It is not necessary for the government to prove that a
7    financial institution was the only or sole victim of the scheme to
8    defraud.  It is also not necessary for the government to prove that
9    the defendant was actually successful in defrauding any financial
10   institution.  Finally, it is not necessary for the government to
11   prove that any financial institution lost any money or property as a
12   result of the scheme to defraud.

13       An "intent to defraud" means to act willfully and with the
14   specific intent to deceive and cheat.

15       6.    Defendant understands that for defendant to be guilty of
16   the crime charged in Count 50, that is, Aggravated Identity Theft, in
17   violation of Title 18, United States Code, Section 1028A(a)(1), the
18   following must be true:

19          a.    First, defendant knowingly possessed or used without
20   legal authority a means of identification of another person;

21          b.    Second, defendant knew that the means of
22   identification belonged to a real person; and

23          c.    Third, defendant did so during and in relation to the
24   commission of Conspiracy to Commit Bank Fraud, in violation of 18
25   U.S.C. § 1349, as charged in Count One of the indictment, or Bank
26   Fraud, in violation of 18 U.S.C. § 1344(1), as charged in Count 23 of
27   the indictment.

28

PENALTIES AND RESTITUTION

7.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1349, is: 30 years' imprisonment; a 5-year period of supervised release; a fine of $1,000,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

8.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1028A(a)(1), is: 2 years' imprisonment; a 1-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

9.   Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: 32 years' imprisonment; a 5-year period of supervised release[1]; a fine of $1,250,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $200.

10.   Defendant understands that the statutory mandatory minimum sentence that the Court must impose for a violation of Title 18, United States Code, Section 1028A(a)(1), is: 2 years' imprisonment,

---

[1] Defendant understands that there is case law suggesting that the term of supervised release on count 50 could be imposed to run consecutively to the terms of supervised release on the other count. While the USAO does not intend to seek a consecutive term of supervised release, defendant understands that if the Court were to impose a consecutive term of supervised release, the maximum term of supervised release for all of the counts of conviction would be six years, rather than five years as stated in the text above.

which must run consecutive to any other sentence of imprisonment, and a mandatory special assessment of $100.

11.  Defendant understands that defendant will be required to pay full restitution to the victims of the offenses to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victims of the offenses to which defendant is pleading guilty and in amounts greater than those alleged in the counts to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offenses to which defendant is pleading guilty; and (b) any counts dismissed pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts.  The parties currently believe that the applicable amount of restitution is approximately $2,722,632.52, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

12.  Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could

result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

13.    Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

14.    Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the convictions in this case make it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his convictions on his immigration

8

status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his pleas may entail, even if the consequence is automatic removal from the United States.

<u>FACTUAL BASIS</u>

15.  Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support pleas of guilty to the charges described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 17 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

a.  Beginning no later than October 14, 2020, and continuing through at least August 18, 2023, in Los Angeles County and Orange County, within the Central District of California, and elsewhere, defendant conspired and agreed with co-defendants CARLOS CORONA, JOHN WESLEY BESS JR., RICARDO OCHOA JR., SAULO SOLARES, CARLOS LUIZ ARELLANO, SOFIA ALVAREZ, KAREN VANESSA MARTINEZ, VANESSA CORTES ARZATE, and RICARDO WILFREDO NICHOLSON (collectively, the "CO-CONSPIRATORS"), to knowingly and intentionally commit bank fraud. Specifically, defendant and the CO-CONSPIRATORS agreed to knowingly execute a scheme to fraudulently obtain money owned by Bank of America, N.A. ("BOA"), Citibank, N.A. ("Citi"), Wells Fargo, N.A. ("WFB"), JP Morgan Chase Bank ("Chase"), U.S. Bancorp ("USB"), Kinecta Federal Credit Union ("Kinecta"), Navy Federal Credit Union ("NFCU"), and SchoolsFirst Federal Credit Union ("SchoolsFirst") (collectively, the "Financial Institutions"), through materially

1  false and fraudulent pretenses, representations, and promises.

2  Defendant joined this conspiracy knowing of this object and intending

3  to help accomplish it.

4    b.  At all times during the conspiracy, BOA, Citi, WFB,

5  Chase, USB, Kinecta, NFCU, and SchoolsFirst were financial

6  institutions insured by the Federal Deposit Insurance Corporation

7  ("FDIC").

8    c.  In furtherance of the conspiracy, co-defendant SOLARES

9  and others stole checks from the U.S. mail, including from mailboxes

10  and post office mail collection boxes located outside of U.S. Post

11  Office locations.  Defendant and co-defendants CORONA, BESS, and

12  OCHOA, and other co-conspirators, would then take possession of the

13  checks that defendant SOLARES and others stole.

14    d.  In furtherance of the conspiracy, defendant and co-

15  defendants CORONA, BESS, OCHOA, ALVAREZ, MARTINEZ, CORTES ARZATE,

16  ARELLANO, and NICHOLSON, and other co-conspirators, solicited bank

17  account holders through social media to provide their debit cards and

18  bank account information to defendant and his co-conspirators.  In

19  return, defendant and his co-conspirators promised these account

20  holders a cut of any fraudulent funds deposited into their accounts.

21  To circumvent the fraud protections of the Financial Institutions,

22  defendant and the co-conspirators specifically requested bank

23  accounts that had been open for a certain amount of time so that they

24  could get access to the stolen funds more quickly.  Once bank account

25  holders responded to the advertisements via social media and provided

26  the information requested in the advertisements, including bank

27  account numbers, PIN numbers, and online banking log-in information,

28  defendant and his co-conspirators also took physical possession of

the account holders' debit cards.  Defendant and his co-conspirators then exchanged the debit cards and bank account information obtained from the bank account holders with each other.

   e.    In furtherance of the conspiracy, defendant and co-defendants CORONA, BESS, and OCHOA, and other co-conspirators, deposited the stolen checks into the bank accounts that had been sourced by defendant and other co-conspirators.  In most cases, the stolen checks were falsely endorsed in the original payee's name.  In doing so, the co-conspirators falsely represented that they were the payees on the checks and were entitled to the funds and concealed that they were not the payees on the stolen checks and that they were not authorized to deposit the checks or receive the payees' funds. In some cases, the checks were washed or altered to make the payee the name of the owner of the bank account into which the checks were being deposited.

   f.    In furtherance of the conspiracy, after the stolen checks were deposited into the bank accounts described above, defendant and co-defendants CORONA, BESS, and OCHOA, and other co-conspirators, rapidly depleted the fraudulently deposited funds from the account holders' accounts by making cash withdrawals, electronic transfers, and/or debit card purchases.

   g.    Throughout the course of the conspiracy, to conceal the fraud, defendant and his co-conspirators instructed account holders to claim that their accounts had been compromised if contacted by the Financial Institutions about the fraudulent deposits.

   h.    Also in furtherance of the conspiracy, defendant and his co-conspirators committed at least the following acts:

i.   On October 8, 2021, in response to co-defendant BESS's Instagram direct message to co-conspirators including defendant and co-defendants CORONA, OCHOA, ARRELLANO, and NICHOLSON, stating that co-defendant BESS needed BOA or WFB accounts and was "ready for a new week" and "new money," defendant said that he needed WFB accounts too.

ii.   On October 14, 2021, defendant sent co-defendant BESS five photographs that depicted a total of approximately 26 stolen checks.

iii. On June 5, 2023, defendant posted an Instagram story inviting followers to direct message him if they were interested in making $5,000 to $25,000 for WFB accounts, $7,000 to $10,000 for BOA accounts, $3,000 to $8,000 for Chase accounts, or $8,000 to $15,000 for NFCU accounts.

iv.   On June 9, 2023, defendant posted an Instagram story inviting followers to direct message him if they were interested in making "some money" and had a bank account, including from Chase, BOA, or WFB.

**Accountholder C.C.H. (WFB Account 4158)**

v.   On February 1, 2021, co-defendant BESS deposited check no. 4025 from T.G., LLC payable to A.B.I. in the amount of $20,530.23 into WFB Account 4158 using WFB Card 2176 at an ATM in Gardena, California.

vi.   On February 2, 2021, in response to defendant's Instagram direct message asking whether the deposit had cleared, co-defendant BESS told defendant to tell C.C.H. to hold off on withdrawing money from WFB Account 4158.

12

1          vii. On February 5, 2021, in Instagram direct

2    messages, defendant asked co-defendant BESS how it was going with WFB

3    Account 4158 that defendant "got" for co-defendant BESS and how many

4    more days it would take to withdraw the full amount of the stolen

5    checks deposited into WFB Account 4158.

6          viii.   On February 6, 2021, co-defendant BESS

7    withdrew $700 in cash from WFB Account 4158 at an ATM in Los Angeles,

8    California.

9          ix.   On February 6, 2021, in response to defendant's

10   Instagram direct message that C.C.H. was asking how long it would

11   take to withdraw the full amount of the stolen checks deposited into

12   WFB Account 4158, co-defendant BESS sent a photograph depicting a

13   portion of a WFB ATM receipt showing a $700 cash withdrawal and a

14   remaining balance of $6,233.28 in WFB Account 4158.

15         x.   On February 8, 2021, co-defendant BESS withdrew

16   $1,000 in cash from WFB Account 4158 at an ATM in Westchester,

17   California.

18         xi.   On February 8, 2021, in response to defendant's

19   Instagram direct message asking if co-defendant BESS had gotten more

20   cash out of WFB Account 4158 that day, co-defendant BESS said he had

21   taken out all $100 bills and that co-defendant BESS would likely

22   complete the withdrawals by Wednesday, February 10, 2021.

23   **Accountholders G.M. & J.M. (WFB Account 4225)**

24         xii. On March 29, 2021, in response to defendant's

25   Instagram direct message that defendant still needed to get the PIN

26   numbers because he forgot to the previous night, co-defendant BESS

27   said, "Hahah need those."

28

1              xiii.   On March 29, 2021, using Instagram direct

2  messages, defendant told co-defendant BESS that defendant's "homie"

3  was "still at work" and would send the PIN numbers "in a bit."

4              xiv. On March 29, 2021, co-defendant BESS deposited

5  check no. 1159 from H., LLC payable to WFB in the amount of $4,000

6  into WFB Account 4225 using WFB Card 7597 at an ATM in Compton,

7  California.

8              xv.   On March 29, 2021, co-defendant BESS deposited

9  check no. 1031 from S.A., LLC payable to G.M.E., Inc. in the amount

10 of $5,000 into WFB Account 4225 at an ATM in Compton, California.

11             xvi. On March 30, 2021, co-defendant BESS withdrew

12 $700 in cash from WFB Account 4225 at an ATM in Gardena, California.

13             xvii.   On March 30, 2021, co-defendant BESS sent

14 defendant an Instagram direct message stating that the stolen checks

15 he had deposited into WFB Account 4225 had cleared.

16             xviii.   On March 30, 2021, using Instagram direct

17 messages, co-defendant BESS sent a photograph to defendant depicting

18 a WFB ATM receipt documenting a $700 cash withdrawal as well as a

19 stack of $50 bills covering a WFB debit card.

20             xix. On March 30, 2021, using Instagram direct

21 messages, co-defendant BESS sent defendant a version of the same

22 photograph with the bank account information redacted and directed

23 defendant to post the photograph to his Instagram story to recruit

24 more accountholders to participate in the scheme.

25 **Accountholder J.R. (WFB Account 3556)**

26             xx.   On December 20, 2021, defendant deposited check

27 no. 26525600 from L.A.U.S.D. payable to M.J.R. in the amount of

28

$46,461.40 into WFB Account 3556 using WFB Card 9739 at an ATM in San Pedro, California.

xxi. On December 21, 2021, defendant withdrew $1,500 in cash from WFB Account 3556 using WFB Card 9739 at an ATM in South Gate, California.

**Accountholder F.H. (WFB Account 9243)**

xxii.   On April 20, 2022, defendant deposited check no. 10450 from M.E., LLC payable to N.I.S., Inc. in the amount of $83,191 into WFB Account 9243 using WFB Card 8469 at an ATM in San Pedro, California.

xxiii.   On April 26, 2022, defendant withdrew $1,000 in cash from WFB Account 9243 using WFB Card 8469 at an ATM in Huntington Park, California.

**Accountholders M.S. & C.S. (WFB Account 0445 & WFB Account 5725)**

xxiv.   On September 28, 2022, defendant deposited check no. 8937 from A.R., LLC payable to C.R. in the amount of $31,471.58 into WFB Account 0445 using WFB Card 6327 at an ATM in Carson, California.

xxv. On September 28, 2022, defendant deposited check no. 1707 from E.C., Inc. payable to J.C., Inc. in the amount of $38,951.50 into WFB Account 5725 using WFB Card 1872 at an ATM in Carson, California.

xxvi.   On September 29, 2022, defendant withdrew $2,500 in cash from WFB Account 0445 using WFB Card 6327 at an ATM in Huntington Park, California.

xxvii.   On September 29, 2022, three minutes after making the $2,500 withdrawal described above, defendant withdrew an

1  additional $2,500 in cash from WFB Account 5725 using WFB Card 1872
2  at an ATM in Huntington Park, California.

3        i.   Defendant admits that by engaging in the conduct and
4  acts described above: (1) he knowingly executed and participated in a
5  scheme to defraud the Financial Institutions of money; (2) he did so
6  with the intent to defraud the Financial Institutions; and (3) he
7  unlawfully obtained money from the Financial Institutions through
8  false and fraudulent pretenses, statements, and representations,
9  which had the natural tendency to influence the Financial
10 Institutions to part with money.

11       j.   Defendant admits that over the course of the
12 conspiracy, he and his co-conspirators: (1) attempted and intended to
13 cause a loss of at least $5,392,100.17 to several of the Financial
14 Institutions; and (2) caused an actual loss of $2,722,632.52 to WFB.
15 Defendant further admits it was reasonably foreseeable to him that
16 all of this loss was a potential result of the above-described bank
17 fraud conspiracy.

18       k.   Defendant admits that he and his co-conspirators
19 caused monetary losses to at least 10 victims, including the
20 Financial Institutions.

21       l.   Lastly, defendant admits that on December 20, 2021, he
22 knowingly possessed and used, without lawful authority, a means of
23 identification that defendant knew belonged to another person, that
24 is, the name and signature of M.J.R., during his participation in the
25 bank fraud conspiracy described above.  Specifically, on December 20,
26 2021, defendant deposited a check made payable to M.J.R. in the
27 amount of $46,461.40 into WFB Account 3556 at an ATM in San Pedro,
28 California.  This check listed M.J.R. as the payee and was falsely

endorsed using M.J.R.'s forged signature.  M.J.R. did not give defendant consent to use or possess M.J.R.'s name or signature.  At the time defendant possessed and deposited this check, he knew that M.J.R.'s name and signature belonged to a real person.

SENTENCING FACTORS

16.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate between the mandatory minimum and up to the maximum set by statute for the crimes of conviction.

17.  Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 7 | U.S.S.G. § 2B1.1(a)(1) |
| More than $3.5 Million of Loss: | +18 | U.S.S.G. § 2B1.1(b)(1)(J) |
| 10 or More Victims: | +2 | U.S.S.G. § 2B1.1(b)(2)(A)(i) |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.  Defendant understands that the Court must sentence defendant to a term of two years'

imprisonment on Count 50, which must run consecutive to any term of imprisonment imposed for Count One.

18. Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

19. Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. §§ 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

20. Defendant understands that by pleading guilty, defendant gives up the following rights:

      a.    The right to persist in a plea of not guilty.

      b.    The right to a speedy and public trial by jury.

      c.    The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial. Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

      d.    The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

      e.    The right to confront and cross-examine witnesses against defendant.

      f.    The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF APPEAL OF CONVICTION</u>

21.   Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offenses to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

<u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

22.   Defendant agrees that, provided the Court, before imposition of the mandatory consecutive sentence of two years' imprisonment on Count 50, imposes a term of imprisonment within or below the range corresponding to an offense level of 24 and the criminal history category calculated by the Court, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory

maximum; (e) the amount and terms of any restitution order, provided it requires payment of no more than $2,722,632.52; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

23.  The USAO agrees that, provided (a) all portions of the sentence are at or above the statutory minimum and at or below the statutory maximum specified above and (b) before imposition of the mandatory consecutive sentence of two years' imprisonment on Count 50, the Court imposes a term of imprisonment within or above the range corresponding to an offense level of 24 and the criminal history category calculated by the Court, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the following: the amount of restitution ordered if that amount is less than $2,722,632.52.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

24.  Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations

will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

### RESULT OF VACATUR, REVERSAL, OR SET-ASIDE

25.  Defendant agrees that if any count of conviction is vacated, reversed, or set aside, the USAO may: (a) ask the Court to resentence defendant on any remaining count of conviction, with both the USAO and defendant being released from any stipulations regarding sentencing contained in this agreement, (b) ask the Court to void the entire plea agreement and vacate defendant's guilty plea on any remaining count of conviction, with both the USAO and defendant being released from all their obligations under this agreement, or (c) leave defendant's remaining conviction, sentence, and plea agreement intact.  Defendant agrees that the choice among these three options rests in the exclusive discretion of the USAO.

### EFFECTIVE DATE OF AGREEMENT

26.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

### BREACH OF AGREEMENT

27.  Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of

defendant's obligations under this agreement ("a breach"), the USAO
may declare this agreement breached.  All of defendant's obligations
are material, a single breach of this agreement is sufficient for the
USAO to declare a breach, and defendant shall not be deemed to have
cured a breach without the express agreement of the USAO in writing.
If the USAO declares this agreement breached, and the Court finds
such a breach to have occurred, then: (a) if defendant has previously
entered guilty pleas pursuant to this agreement, defendant will not
be able to withdraw the guilty pleas, and (b) the USAO will be
relieved of all its obligations under this agreement.

28.  Following the Court's finding of a knowing breach of this
agreement by defendant, should the USAO choose to pursue any charge
that was either dismissed or not filed as a result of this agreement,
then:

a.  Defendant agrees that any applicable statute of
limitations is tolled between the date of defendant's signing of this
agreement and the filing commencing any such action.

b.  Defendant waives and gives up all defenses based on
the statute of limitations, any claim of pre-indictment delay, or any
speedy trial claim with respect to any such action, except to the
extent that such defenses existed as of the date of defendant's
signing this agreement.

c.  Defendant agrees that: (i) any statements made by
defendant, under oath, at the guilty plea hearing (if such a hearing
occurred prior to the breach); (ii) the agreed to factual basis
statement in this agreement; and (iii) any evidence derived from such
statements, shall be admissible against defendant in any such action
against defendant, and defendant waives and gives up any claim under

the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

<u>COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES</u>

<u>OFFICE NOT PARTIES</u>

29. Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

30. Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 17 are consistent with the facts of this case. While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

31.   Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be between the statutory mandatory minimum and within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

32.   Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

//

//

//

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

33.  The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

E. MARTIN ESTRADA
United States Attorney

*Sarah E. Spielberger*                          April 10, 2024
SARAH E. SPIELBERGER                             Date
Assistant United States Attorney

                                                 April 25, 2024
JOSE LUIS EDEZA JR.                              Date
Defendant

                                                 April 25, 2024
CHARLES C. BROWN                                 Date
Attorney for Defendant JOSE LUIS
EDEZA JR.


//

//

//

25

<u>CERTIFICATION OF DEFENDANT</u>

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement.  I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____          April 25, 2024
JOSE LUIS EDEZA JR.                       _____
Defendant                                 Date


//

//

//

<u>CERTIFICATION OF DEFENDANT'S ATTORNEY</u>

I am JOSE LUIS EDEZA JR.'s attorney.  I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of guilty pleas pursuant to this agreement.

_____          April 25, 2024
CHARLES C. BROWN                           _____
Attorney for Defendant JOSE LUIS           Date
EDEZA JR.

27